UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STEVE MAHONEY,

                Plaintiff,

       -against-                      **MEMORANDUM OF DECISION AND ORDER**
                                                       11-cv-5538(ADS)(AKT)
YAMAHA MOTOR CORP. U.S.A.,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**The Law Offices of Anthony C. Donofrio, PLLC**
*Attorneys for the Plaintiff*
5518 Merrick Road
Massapequa, NY 11758
       By:    Arnab Bhukta, Esq., of Counsel

**Webster Szanyi, LLP**
*Attorneys for the Defendant*
1400 Liberty Building
Buffalo, NY 14202
       By:    Kevin A. Szanyi, Esq.
                   Kevin Thomas O'Brien, Esq., of Counsel

**SPATT, District Judge.**

The Plaintiff Steve Mahoney ("Mahoney" or "the Plaintiff") brought suit against the Defendant Yamaha Motor Corp. U.S.A. ("Yamaha" or "the Defendant") for manufacturing and design defects, arising from an alleged accident that occurred while the Plaintiff was riding a motorcycle made by the Defendant. In light of the Plaintiff's motion to discontinue the case, the Defendant has now filed a cross-motion for attorney's fees against both Mahoney and his Counsel, Arnab Bhukta, Esq. For the reasons set forth below, this Court grants in part and denies in part the Defendant's motion.

1

## I. BACKGROUND

This case was commenced by the Plaintiff in New York State Supreme Court, County of Suffolk, Index No. 15607/11, on or about April 15, 2011. The Plaintiff brought several claims, including causes of action for manufacturing defects, design defects, and negligence. The complaint alleged that the Plaintiff's motorcycle flipped and crashed while in operation on the Southern State Parkway as a result of an engine stall, allegedly related to a recall notice that Yamaha distributed in 2006. According to the recall, an "improperly designed Throttle Position Sensor ('TPS') could cause an intermittently unstable idle when the engine is at idling speed when the motorcycle is stopped or during low-speed operation." (See Declaration of Kevin A. Szanyi ("Szanyi Decl.") at Exhibit K.)

The Plaintiff's state court complaint did not specify the amount of damages sought, which is proper under New York law. However, in order to properly assess whether federal diversity jurisdiction existed, Yamaha served a demand pursuant to New York's Civil Practice Law and Rules ("CPLR") 3017(c) on the Plaintiff's counsel, Mr. Arnab Bhukta, on July 18, 2011. Mr. Bhukta had fifteen days to respond to the demand, but never did. (Szanyi Decl. at ¶¶ 8–9.) After several failed attempts by Yamaha to communicate with Plaintiff's Counsel, Yamaha filed a motion to compel in New York State court on October 4, 2011. On October 16, 2011, Mr. Bhukta informed Yamaha that his client sought $2 million in damages.

On November 11, 2011, Yamaha removed the action to this Court, and on January 24, 2012, an initial conference was held before United States Magistrate Judge A. Kathleen Tomlinson. At this conference, Magistrate Judge Tomlinson (1) ordered the Plaintiff to provide Health Insurance Portability and Accountability Act ("HIPAA") medical authorizations to Yamaha within ten days of the conference; and (2) issued a Case Management Order, setting

discovery deadlines. After ignoring the HIPAA Order and all communications regarding it from Yamaha's counsel, Mr. Bhukta finally provided the medical authorizations on March 19, 2012, more than one month past the deadline. (Szanyi Decl. at ¶¶ 27–29.) Furthermore, Yamaha served its discovery demands in accordance with the Case Management Order, yet Mr. Bhukta failed to serve any discovery demands on Yamaha or to respond to Yamaha's discovery requests. (Szanyi Decl. ¶¶ 30–32.)

On May 4, 2012, after Mr. Bhukta failed to respond to the Defendant's discovery demands or requests for information regarding document production, Yamaha filed a motion to compel the Plaintiff to respond to its discovery demands. (Docket Entry ("DE") No. 15.) Mr. Bhukta failed to respond to this motion. On May 9, 2012, Magistrate Judge Tomlinson issued an order requiring Mr. Bhukta to immediately respond to Yamaha's motion, which order he failed to obey. On May 11, 2012, Magistrate Judge Tomlinson issued a Scheduling Order, setting a hearing for May 24, 2012 to discuss Mr. Bhukta's failure to respond to the Defendant's discovery demands, motion, and court orders. (Szanyi Decl. ¶ 44.)

On June 18, 2012, Mr. Bhukta filed a motion to withdraw from representation of the Plaintiff pursuant to Local Rule 1.4. (DE No. 19.) According to Mr. Bhukta, although his client had claimed that he sold the vehicle after the accident, the Defendant produced evidence that demonstrated that the motorcycle was re-registered to the Plaintiff seven months after the accident. Moreover, the Plaintiff's Counsel claimed that he obtained the relevant medical records, which stated that his client's injuries occurred as a result of a fall off a ladder. In sum, because of the claimed multiple misrepresentations or half-truths made by the Plaintiff and the unlikelihood of success if the matter was not discontinued, Mr. Bhukta sought to be relieved as Counsel for the Plaintiff.

On June 27, 2012, the Defendant filed a cross-motion for attorney's fees and costs pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 16 and 28 U.S.C. § 1927. (DE No. 23.) According to the Defendant, since the case was initiated on April 15, 2011, there was "a constant pattern of delay by [the P]laintiff and his counsel, and a complete refusal to comply with the obligations imposed upon all parties and their counsel by the Federal Rules of Civil Procedure." (Defendant's Memorandum of Law at 1.)

The parties appeared for a hearing before this Court on July 23, 2012. Although the Plaintiff himself did not appear, the Plaintiff's Counsel agreed to discontinue the case with permission from his client. However, the Defendant explained to the Court that it took issue with a discontinuance because it had incurred substantial costs in defending an action with no merit. In addition, according to the Defendant, it was exposed to significant costs because of the Plaintiff's demonstrated delay and unresponsiveness. For example, the Plaintiff had served no discovery requests and did not respond to any of the Defendant's discovery requests.

As such, this Court granted Mr. Bhukta's motion to discontinue the case, yet reserved decision regarding the Defendant's cross-motion for attorney's fees and costs. The Court directed Mr. Bhukta to file a response to the present motion for attorney's fees and costs by August 6, 2012, and provided the Defendant until August 20, 2012, to submit its reply.

## II. DISCUSSION

### A. Legal Standards

The Court of Appeals for the Second Circuit has held that determining the appropriateness of imposing sanctions is "one of the most difficult and unenviable tasks for a court." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999). "On the one hand, a court should discipline those who harass their opponents and waste judicial

4

resources by abusing the legal process.  On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules." Id. at 341; see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 166 (2d Cir. 1999) ("The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories.").  One of the main issues presented to this Court is whether Mr. Bhukta's conduct has crossed this "frivolous" line.

### 1. Fed. R. Civ. P. 16(f) and Fed. R. Civ. P. 37(b)

Rule 16 of the Federal Rules of Civil Procedure authorizes a court to order sanctions if an attorney "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1).  Specifically, it provides that the court "must order the [violating] party, its attorney, or both to pay reasonable expenses— including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award unjust." Fed. R. Civ. P. 16(f)(2).  "In deciding whether a sanction is merited, the court need not find that a party acted in bad faith.  The fact that a pretrial order was violated is sufficient to allow some sanction."  Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, 6A Federal Practice and Procedure § 1531 (3d ed. 2010) (footnote omitted).  The imposition of sanctions pursuant to Rule 16 is within the sound discretion of the court.  Neufeld v. Neufeld, 172 F.R.D. 115, 118 (S.D.N.Y. 1997).

Similarly, Federal Rule of Civil Procedure 37(b) permits sanctions for a failure to comply with discovery orders, which are distinct from Rule 16(f) "scheduling orders." Camara v. Daise, No. 98 CIV 808 RMB RLE, 2001 WL 263006, at *5 (S.D.N.Y. Mar. 9, 2001).  In pertinent part,

5

a district court may order "the disobedient party, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure [to comply with discovery orders], unless the failure was substantially justified or other circumstances make an award of expenses unjust."  See Fed. R. Civ. P. 37(b)(2)(C); Roadway Express, Inc. v. Piper, 447 U.S. 752, 763, 100 S. Ct. 2455, 2462, 65 L. Ed. 2d 488 (1980).

As a practical matter, the same standards govern dismissal under both rules.  These sanctions should be applied not only "to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976).

### 2. 28 U.S.C. § 1927 and the Court's Inherent Power

Another vehicle by which a court may issue sanctions is Section 1927 of Title 28 of the United States Code.  28 U.S.C. § 1927 authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  While the standard for triggering sanctions under Rule 11, discussed further below, is "objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), to impose sanctions under § 1927, the court must make a finding of "conduct constituting or akin to bad faith."  In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (citation and internal quotation marks omitted).  See U.S. v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute."); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) ("[A]n award under § 1927 is proper when the attorney's actions are so *completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").  "Unlike Rule 11 sanctions which focus on particular

6

papers, the inquiry under § 1927 is on a course of conduct." Bowler v. U.S. Immigration & Naturalization Serv., 901 F. Supp. 597, 605 (S.D.N.Y. 1995).

Courts also possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Revson, 221 F.3d at 78 (internal quotation marks omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Similar to § 1927, an award of sanctions under the court's "inherent power" requires the defendants to present "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (citations andinternal quotation marks omitted). "A claim lacks colorable basis when it is utterly devoid of legal or factual basis." Reichmann v. Neumann, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008).

"Thus, 'to impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless *and* (2) the party acted for improper purposes.'" Revson, 221 F.3d at 29 (emphasis added) (quoting Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997)). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Sierra Club v. U .S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir. 1985). A court should not deem a party to have acted in bad faith if solely predicated upon that party's filing of a meritless motion. See Eisemann v. Greene, 204 F.3d 393 (2d Cir. 2000). Nonetheless, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power." Chambers, 501 U.S. at 50; see also Mathias v. Jacobs, 167 F. Supp. 2d 606,

7

623 (S.D.N.Y. 2001) ("Even if the Federal Rules or a statute provides an adequate basis for imposing sanctions, a court still may resort to its inherent power as the source of the sanctions, but the Supreme Court has expressed a preference for the imposition of sanctions under the Federal Rules, when possible.").

### 3. Fed. R. Civ. P. 11

Fed. R. Civ. P. 11 provides a court with yet another means of issuing sanctions. A court may sanction an attorney, or the responsible law firm, that violates Fed. R. Civ. P. 11, which states that by signing or submitting a "pleading, written motion, or other paper" to the court, an attorney certifies that "to the best of the [attorney's] knowledge, information and belief, formed after [a reasonable] inquiry", that:

> (1) [the pleading, written motion, or other paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)–(c). "Under Rule 11, to avoid the risk of sanctions, a party's counsel must undertake reasonable inquiry to ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." Young v. Suffolk Cnty., No. 09-cv-3325 (JFB)(ARL), 2013 WL 491982, at *23 (E.D.N.Y. Feb. 11, 2013) (internal quotations omitted). A high standard exists for imposing Rule 11 sanctions. See Eisenberg v. Yes Clothing Co., No. 90 CIV. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak"); Oliveri, 803 F.2d at 1275 ("[R]ule 11 is violated only when it is patently

clear that a claim has absolutely no chance of success."). Furthermore, in imposing Rule 11 sanctions, this Circuit looks only to the attorney's representations when the initial paperwork was signed, and does not consider whether the attorney continued to prosecute a claim that had become frivolous. Id. at 1274–75.

**B. As to Whether the Plaintiff or his Counsel Should be Sanctioned**

Highlighted above are the various rules under which a court may sanction an attorney or a party. The Court now addresses each of these bases for sanctions in connection with the present case, and concludes that Mr. Bhukta violated both Rule 16 and Rule 37 of the Federal Rules of Civil Procedure and thus sanctions are warranted under these Rules.

**1. Fed. R. Civ. P. 16(f)**

As set forth above, the imposition of sanctions pursuant to Rule 16 is within the sound discretion of this Court, in which this Court does not need to find that a party acted in bad faith. Neufeld, 172 F.R.D. at 118; Wright, Miller, Kane & Marcus, § 1531. Rather, the fact that a party violated a pretrial order is sufficient to allow a Rule 16 sanction. Wright, Miller, Kane & Marcus, § 1531.

Here, Mr. Bhukta violated multiple scheduling and pretrial orders. In addition to failing to timely respond to Magistrate Judge Tomlinson's HIPAA medical authorizations order, Mr. Bhukta completely failed to obey the Case Management Order. He never responded to Yamaha's timely filed discovery requests, and did not file his own discovery demands. Yamaha then filed a motion to compel the Plaintiff to respond to its discovery requests, which Magistrate Judge Tomlinson ordered the Plaintiff to abide by. However, Mr. Bhukta again failed to obey this order by not responding to Yamaha's discovery demands.

9

Mr. Bhukta's failure to comply with multiple court orders was not substantially justified, and this Court finds no other circumstance that makes imposing a sanction against him unjust. See Fed. R. Civ. P. 16(f)(2). Mr. Bhukta made no attempt to communicate with either the Defendant or this Court regarding his inability to comply with the orders. Mr. Bhukta's failure to do so caused the Defendant to incur additional expenses, including fees associated with filing motions, drafting letters and placing phone calls to Mr. Bhukta seeking discovery responses, and traveling to attend the May 24, 2012 status conference ordered by Magistrate Judge Tomlinson. In this May 24 status conference, many months after his discovery and court ordered responses were due, Mr. Bhukta explained for the first time that he had been having a difficult time communicating with his client. Later, in Mr. Bhukta's Declaration ("Bhukta Decl."), dated August 3, 2012, he added that his client's unwillingness to cooperate with the litigation was a significant reason of his repeated failure to comply with the discovery requests and court orders. Mr. Bhukta also added that his "inexperience . . . in dealing with such a client" is partly to blame for his delays. (Bhukta Decl. at 38.) None of these explanations substantially justifies Mr. Bhukta's on-going failure to explain his delays, and disobedience of court orders. As such, this Court finds Mr. Bhukta in violation of Rule 16(f).

**2. Fed. R. Civ. P. 37(b)**

Mr. Bhukta's actions also warrant a sanction under Fed. R. Civ. P. 37(b) for a failure to comply with discovery orders.

For example, in a recent case entitled Toborg v. United States, an attorney failed to (1) comply with the Pretrial Scheduling Order; (2) respond to discovery demands; and (3) serve any discovery demands. In addition, such failure was not substantially justified. Toborg v. U.S., Civ. No. 1:11-CV-150 (GLS/RFT), 2012 WL 5472298, at *1 (N.D.N.Y. Oct. 19, 2012) *report*

*and recommendation adopted*, Civil Action No. 1:11-cv-150 (GLS/RFT), 2012 WL 5471129 (N.D.N.Y. Nov. 9, 2012). The Toborg court determined that a sanction was warranted for the failure to obey a discovery order under Fed. R. Civ. P. 37(b)(2)(C). Furthermore, the same court held that a sanction of attorney's fees was also warranted under either Fed. R. Civ. P. 37(b) or 16(f) because the party failed to abide by numerous court orders, including the scheduling order. See Carmona v. Wright, 233 F.R.D. 270 (N.D.N.Y. 2006).

Here, similar to the sanctioned counsel in Toborg, Mr. Bhukta failed to (1) comply with the pretrial Case Management Order; (2) respond to discovery demands; and (3) serve any discovery demands. Furthermore, Mr. Bhukta failed to obey Magistrate Judge Tomlinson's May 9, 2012 Order compelling discovery. Since Mr. Bhukta's failure to obey such demands and orders was not substantially justified, a sanction under Fed. R. Civ. P. 37(b) is warranted.

### 3. 28 U.S.C. § 1927 and the Court's Inherent Power

Section 1927 of Title 28 of the United States Code authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. This Circuit has held that bad faith is necessary to impose sanctions under this rule. Int'l Bhd. of Teamsters, 948 F.2d at 1345. Similarly, an award of sanctions under the court's inherent power requires a defendant to present "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." Oliveri, 803 F.2d at 1272 (citations and internal quotation marks omitted). While a court may use its inherent power to impose sanctions, it should instead rely on the Federal Rules of Civil Procedure if feasible. See Mathias, 167 F. Supp. 2d at 623.

Here, Mr. Bhukta's actions do not warrant a sanction under either 28 U.S.C. § 1927 or this Court's inherent powers. This Court finds no clear evidence that Mr. Bhukta acted in bad

faith in filing the complaint or proceeding with the litigation. The Defendant claims that Mr. Bhukta had knowledge that Mahoney's claims regarding the motorcycle accident were meritless, as the information available in the recall notice is not in accord with Mahoney's account of the incident, particularly the speed at which the motorcycle was traveling. Even if the Defendant is correct in its presumption, this Circuit has explicitly held it improper to determine that a party acted in bad faith if that party filed a meritless claim. Eisemann, 204 F.3d at 397. Similarly, a district court recently chose not to sanction an attorney for making misrepresentations, noting that these errors may have been the result of negligent preparation rather than for purpose of delay or harassment. Hopson v. Riverbay Corp., 190 F.R.D. 114 (S.D.N.Y. 1999).

There is little dispute that Mr. Bhukta should have reasonably determined that his client's claim was meritless based on the information he was given. The recall notice explicitly states that the motorcycle may experience an unstable idle when being driven at low speeds, and Mr. Bhukta's client informed him of his motorcycle accident while traveling at a high speed on the highway. However, some of the facts do suggest that Mr. Bhukta's client was involved in a motorcycle accident while driving one of the Defendant's faulty motorcycles, and that Mahoney did go to the hospital. Accordingly, this Court finds that Mr. Bhukta did not file his complaint, while seemingly meritless, for "purpose of delay or harassment."

Furthermore, this Court finds it inappropriate to sanction Mr. Bhukta under its inherent powers. As per Mathias, 167 F. Supp. at 623, a court should sanction an attorney under the Federal Rules of Civil Procedure if possible. Here, Mr. Bhukta is being properly sanctioned under the Federal Rules of Civil Procedure, therefore this Court need not use its inherent power to further sanction him.

### 4. Fed. R. Civ. P. 11

The Defendant also seeks sanctions pursuant to Fed. R. Civ. P. 11. However, under the dictates of Eisenberg, the complaint here does not warrant Rule 11 sanctions. Furthermore, in recently declining to impose Rule 11 sanctions, another court in this district found no reason to believe that the plaintiff was aware "that the lawsuit was filed in bad faith or was frivolous." See Young, 2013 WL 491982, at *23. Similar to Young, this Court finds no reason to believe that Mr. Bhukta knew at the time he filed the lawsuit that it was frivolous. Mr. Bhukta was provided with the recall notice, which explains the improperly designed TPS and potential for an unstable idle. He was also provided with the tow receipt, indicating that his client's motorcycle was involved in an accident. Given the high standard required to impose Rule 11 sanction, this Court therefore declines to impose Rule 11 sanctions on Mr. Bhukta.

### 5. Due Process

On a final note, as recently noted by the Second Circuit:

> An attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.

Wilson v. Citigroup, N.A., 702 F.3d 720, 725 (2d Cir. 2012) (quoting Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997). In Wilson, citing to the potential prejudice the plaintiff caused, the district court *sua sponte* imposed a sanction for the plaintiff's untimely, yet not bad faith, filing of motion papers. Id. at 723. The Second Circuit reversed this sanction, noting that the district court did not afford the sanctioned attorneys any of the necessary due process protections. Id. at 725.

Here, Mr. Bhukta was provided sufficient notice and an opportunity to be heard regarding a possible sanction. He was warned not only of the conduct alleged to be sanctionable, but also the standard by which the conduct would be assessed, as well as the authority under which sanctions were being considered. Unlike in Wilson, this Court did not sanction Mr. Bhukta *sua sponte*. Rather, the Defendant filed a motion seeking its reasonable fees and costs from the Plaintiff and his counsel, which prompted the Court to hold a hearing in which the Defendant was directed to orally articulate the basis for its motion. The Plaintiff's counsel was afforded an opportunity to defend himself against the specific charges. Furthermore, this Court provided Mr. Bhukta with an opportunity to submit his defenses in writing for the Court's consideration. Mr. Bhukta responded to the motion for sanctions against him in a timely fashion by filing an opposition to the motion, which clearly demonstrates his opportunity to be heard.

In Mr. Bhukta's response Declaration, he mentions that his client "made several misrepresentations to [him]," and that "all delays in [the] matter stemmed from [these] misrepresentations . . . and . . . [Mr. Bhukta's] inexperience . . . in dealing with such a client, but not in bad faith." He further adds that these misrepresentations, as well as an "unwillingness by [his] client to cooperate with the litigation" are a "large part" of why he failed to obey the HIPAA authorizations order. Finally, Mr. Bhukta explains the financial hardship he would suffer if sanctioned, stemming from his law school debt and lack of any savings.

Although Mr. Bhukta was provided with this opportunity to be heard, his response Declaration failed to explain why he did not inform this Court or the Defendant of his communication issues with his client at the time he experienced this difficulty. Furthermore, Mr. Bhukta could still have timely requested discovery documents from the Defendant, which his Declaration failed to address.

In sum, this Court finds that Mr. Bhukta failed to obey the scheduling order and other court orders. He did not provide a substantial justification for such failure, and therefore violated both Fed. R. Civ. P. 16(f) and Fed. R. Civ. P 37(b)(2). Since Mr. Bhukta was afforded notice and an opportunity to be heard regarding his repeated failures to comply with court orders, this Court finds no issue in imposing a monetary sanction on Mr. Bhukta.

### C. As to the Proper Amount of Sanctions

In this Court, a monetary sanction denoting a portion of the costs and fees spent by the non-sanctioned party is authorized under Rule 37(b)(2). See Burgie v. Euro Brokers, Inc., No. 05CV968 (CPS)(KAM), 2006 WL 845400, at *17 (E.D.N.Y. Mar. 30, 2006) *aff'd*, No. CV-05-0968 (CPS), 2007 WL 1704178 (E.D.N.Y. June 12, 2007); Fed. R. Civ. P. 37(b)(2)(C). A court may also award attorney's fees when sanctioning a party under Fed. R. Civ. P. 16(f), though only for reasonable expenses incurred because of noncompliance with this rule. See Former Emps. of Tyco Elecs., Fiber Optics Div. v. U.S. Dep't of Labor, 259 F. Supp. 2d 1246 (Ct. Int'l Trade 2003) (holding that the purpose of Fed. R. Civ. P. 16(f) sanctions is to deter undesirable conduct, not to fee shift, therefore a sanction of attorney's fees under this rule does not create an entitlement to *full* compensation); Uretsky v. Acme Am. Repairs, No. CV-07-4688 (DLI), 2011 WL 1131326 at *1 (E.D.N.Y. Mar. 28, 2011) (holding that Fed. R. Civ. P. 16(f) does not create an entitlement to a full attorney's fee compensation, but instead "any fees awarded must be related to the expenses incurred as a result of the sanctioned misconduct."). Furthermore, "the purposes of Rule 37(b) and 16(f) [are best] served by imposing sanctions upon plaintiff's counsel, rather than plaintiff h[im]self." Burgie, 2006 WL 845400, at *17. This Circuit warns that when imposing a monetary sanction upon a party, the issuing court should take into

consideration the financial situation of the party to be sanctioned. Sassower v. Field, 973 F.2d 75, 81 (2d Cir. 1992); Bowler, 901 F. Supp. at 606.

Here, Mr. Bhukta's actions violate Fed. R. Civ. P. 16(f) and Fed. R. Civ. P. 37(b), warranting this Court to impose a monetary sanction. He (1) completely ignored court orders regarding the provision of HIPAA authorizations; (2) failed to serve discovery demands by the date set in the Case Management Order; (3) failed to respond to Yamaha's discovery demands or requests for information regarding document production; (4) failed to respond to Yamaha's letter motion to compel discovery; and (5) violated a court order by failing to respond to Yamaha's motion, even after being ordered to do so by Magistrate Judge Tomlinson.

While the Defendant states that its total fees for the cost of the litigation are "almost $40,000," the Court finds that sanctioning Mr. Bhukta in the amount of this full compensation is unjust for two reasons. First, based upon the Court's review, it appears that in prior cases where attorneys were deserving of sanctions for reasons *other* than acting in bad faith, they were sanctioned for amounts significantly less than the total attorney's fees. Former Emps. of Tyco Elecs., 259 F. Supp. 2d at 1253 (sanction of $3,728.75 was imposed on an attorney, half of the attorney's fees amount of $7,457.50, after finding that the sanctioned attorney did not act in bad faith or malice); Uretsky, 2011 WL 1131326 at *1–3 (sanction of $8,422.70 was imposed on an attorney, fifty-five percent of the attorney's fees amount of $15,314, after the attorney failed to appear at a scheduled pre-trial conference). Here, the evidence suggests that Mr. Bhukta did not act in bad faith from the onset of this case.

Second, while the Defendant asserts that it "incurred almost $40,000 in legal fees and expenses defending a lawsuit that had no basis in fact or law, and . . . the lawsuit dragged on for more than a year because of [Mr. Bhukta's] . . . disregard for . . . procedural rules and Court

16

Orders," Mr. Bhukta's failure to comply with the rules and court orders did not affect the Defendant's fees in initially defending the lawsuit. Since the Court finds that Mr. Bhukta did not file his client's lawsuit in bad faith, the Defendant cannot recover *all* its fees incurred in defending itself. As per the dictates of Uretsky, in which the awarded attorney's fees must be correlated to the expenses incurred as a result of the sanctioned behavior, here, at most, the Defendant is only entitled to the fees it sustained as a result of Mr. Bhukta's failure to obey the various court orders.

While Mr. Bhukta argues that he is inexperienced and has significant law school debt, sanctions are imposed to deter improper conduct, which is precisely how Mr. Bhukta acted in this lawsuit. Mr. Bhukta is a member of the law firm of The Law Offices of Anthony C. Donofrio (Bhukta Decl. at ¶ 1), whose other members could have assisted Mr. Bhukta with any inexperience he suffers from. However, a court must consider the financial circumstances of the party upon whom it is imposing an attorney's fees sanction. Sassower, 973 F.2d at 81.

Therefore, in considering Mr. Bhukta's conduct and his alleged poor financial situation, the Court now sanctions the Plaintiff's counsel, the Law Offices of Anthony C. Donofrio, PLLC, in the sum of $3,500 as a result of the Plaintiff's Counsel's sanctionable behavior. The Plaintiff's counsel is directed to make this payment to the Defendant on or before April 19, 2013.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant's cross-motion for sanctions is granted in part and denied in part; and it is further

**ORDERED,** that the Plaintiff's counsel is sanctioned in the sum of $3,500; and it is further

**ORDERED,** that the Plaintiff's counsel is directed to make this payment to the Defendant on or before April 19, 2013.

**SO ORDERED.**
Dated: Central Islip, New York
March 19, 2013

___<u>/s/ Arthur D. Spatt</u>_____<br>ARTHUR D. SPATT<br>United States District Judge